UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LARRY R. BRYANT and LAURA BRYANT, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:15-CV-3818-B |
| BANK OF AMERICA, N.A., and RUSHMORE LOAN MANAGEMENT SERVICES, LLC, | § § § § | |
| Defendants. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Bank of America, N.A.'s Rule 12(b)(6) Motion to Dismiss

(Doc. 12). For the following reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's

Motion.

## I.

## BACKGROUND

A.    *Sources of Fact*

As best it can, the Court draws its factual account from the allegations in Plaintiffs' Second

Amended Complaint (Doc. 10).  *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 725

(5th Cir. 2002) (noting that, when considering a Rule 12(b)(6) motion to dismiss, "all facts pleaded

in the complaint must be taken as true"). But Plaintiffs omit certain details regarding their initial

purchase of the property at issue in this suit and their 2010 bankruptcy, so the Court—to flesh out

its background section—must turn to the exhibits Defendant Bank of America, N.A. attached to

its Motion to Dismiss.[1]

B.    *Factual Background*

This is a suit for failure to comply with certain statutory requirements imposed upon mortgage servicers. Plaintiffs Larry R. Bryant and Laura Bryant (the Bryants) obtained a loan from Bank of America, N.A. (BANA) for $209,600.00 on August 27, 2003, to purchase the property located at 14104 Bridle Trail, Forney, Texas 75126 (the Property). Doc. 10, Second Am. Compl. ¶¶ 4–5; Doc. 12-2, Def.'s App. 2, Ex. A, Adjustable Rate Note. The Bryants secured the loan by contemporaneously executing a Deed of Trust on the Property in BANA's favor. Doc. 10, Second Am. Compl. ¶ 5; Doc. 12-2, Def.'s App. 9–25, Ex. B, Deed of Trust.

About seven years later, the Bryants filed for Chapter 13 Bankruptcy here in the Northern District of Texas. Doc. 12-2, Def.'s App. 72–73, Ex. I, Bankr. Docket Sheet. During those proceedings, they scheduled $219,562.00 in debt and $25,611.00 in arrears, due to BAC Home Loan Servicing (BAC) as servicer for BANA, and secured by the Property. *Id.* at 67, Ex. G, Schedule D - Creditors Holding Secured Claims. Five years later, on November 24, 2015, the Bankruptcy Court entered an order denying the Bryants' request for a discharge, and on December 31, 2015, it closed the case. *Id.* at 69–70, Ex. H, Order Denying Discharge; *id.* at 83, Ex. I, Bankr. Docket Sheet.

It was during their bankruptcy, on or about January 13, 2014, that Larry R. Bryant (Mr.

---

[1] This is proper, as these documents are: (1) referred to, at least implicitly, in Plaintiffs' complaint, *see* Doc. 10, Second Am. Compl. ¶ 5; (2) central to Plaintiffs' claims, *see generally id.*; and/or (3) matters of public record. *See* Doc. 12-2, Def.'s App. 51–84, Exs. F–I; *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) ("We note approvingly . . . that various other circuits have specifically allowed that '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'"); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.") (citations omitted); *In re Cortez*, 217 B.R. 538, 538 (Bankr. S.D. Tex. 1997) (finding bankruptcy filings and dockets are public records).

Bryant) allegedly sent BANA a first complete loss mitigation application for a loan modification. Doc. 10, Second Am. Compl. ¶ 6. After five weeks without a response, the Bryants say he sent a second application, and, after four more weeks without a response, a third. *Id.* In total, the Bryants say they submitted four applications to BANA between January and November 2014, never receiving a written response to inform them whether their request had been approved or denied. *Id.* ¶ 7.

After the Bryants allegedly sent their last application to BANA, in November 2014, BANA transferred servicing on the loan to Rushmore Loan Management Services, LLC (Rushmore). Doc. 10, Second Am. Compl. ¶ 7; Doc. 12, Def.'s Mot. to Dismiss Pl.'s Second Am. Compl. ¶ 1 [hereinafter Def.'s Mot. to Dismiss].[2] According to the Bryants, Rushmore then requested they send a fifth loss mitigation application, which they say they did in June 2015, again, receiving no response within the statutory time period. Doc. 10, Second Am. Compl. ¶ 8. The Bryants allege they then sent Rushmore a sixth application, plus "subsequent additional requested supporting documents," on or about August 17, 2015.[3] *Id.* ¶ 9. Again, they claim they received no response, only a Notice of Sale indicating the Property would be foreclosed upon on November 3, 2015. *Id.*

C.    *Procedural Background*

On October 29, 2015, the Bryants sued BANA and Rushmore in state court. *See* Doc. 1-1, Original Pet.[4] BANA then removed the case to this Court, where the Bryants amended their

---

[2] Around March 16, 2015, BANA assigned its interest in the Deed of Trust to Wilmington Savings Fund Society, FSB (Wilmington) as trustee for BCAT 2014-9TT. Doc. 12-2, Def.'s App. 40–46, Ex. D, Assignment.

[3] It is not clear to the Court how Rushmore failed to respond to the Bryants' fifth loss mitigation application and, at the same time, requested additional supporting documents.

[4] Evidently, the Property has still not been foreclosed upon. *See generally* Doc. 21, Br. in Supp. of Def. Rushmore Loan Mgmt. Servs., LLC's Mot. for Final Summ. J. Am.

complaint. Doc. 1, Notice of Removal; Doc. 10, Second Am. Compl. In their Second Amended

Complaint, the Bryants bring claims against Defendants for:

> (1) failure to respond to loan modification requests under 12 C.F.R. § 1024.41, requesting damages under 12 U.S.C. § 2605(f), Doc. 10, Second Am. Compl. ¶¶ 12–16;

> (2) failure to comply with pre-foreclosure requirements for servicers under 12 C.F.R. §§ 1024.41(f)(2), (g), *id.* ¶ 9;

> (3) failure to notify borrowers of a servicing transfer on a loan under 12 U.S.C. § 2605(b), (c), *id.* ¶¶ 26–28;

> (4) agency and respondeat superior, *id.* ¶ 14;

> (5) failure to send periodic statements for residential mortgage loans under the Truth in Lending Act (TILA), 15 U.S.C. § 1638(f), *id.* ¶¶ 23–25; and

> (6) "threatening to take an action prohibited by law, specifically seeking to sell the Property at a foreclosure sale in violation of federal law," thereby violating the Texas Debt Collection Act (TDCA), *id.* ¶¶ 29–34.

The Bryants also seek:

> (7) a declaratory judgment against Rushmore for violating 12 C.F.R. § 1024.41(d) by failing to respond to a loan modification application with written notice, asking the Court to declare that Rushmore is prohibited from foreclosing upon the Property until it gives such notice, as required by 12 C.F.R. § 1024.41(c)(1)(ii). *Id.* ¶¶ 35–36.[5]

BANA moved to dismiss the Bryants' Second Amended Complaint on January 25, 2016,

(Doc. 12), the Bryants responded on February 15, 2016, (Doc. 16), and BANA replied on February

29, 2016, (Doc. 15). Therefore, BANA's Motion is now ready for review.

---

[5] The Bryants also seek attorneys fees under section 392.403 of the Texas Finance Code, Chapter 37 of the Texas Civil Practice and Remedies Code, 15 U.S.C. § 1640(a)(3), and 12 U.S.C. § 2605(f). Doc. 10, Second Am. Compl. ¶ 38. Further, in their response to Defendant's Motion to Dismiss, they object to some of the exhibits BANA puts forth. Doc. 14, Pls.' Resp. ¶¶ 14–24.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The Court will, however, examine "[d]ocuments that a defendant attaches to a motion to dismiss," because these "are considered part of the pleadings," so long as "they are referred to in the plaintiff's complaint and are central to her claim." *Collins*, 224 F.3d at 498–99 (internal citations omitted). The Court will also take judicial notice of matters of public record, such as bankruptcy filings and dockets. *See Norris*, 500 F.3d at 461 n.9; *In re Cortez*, 217 B.R. at 538.

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but

- 5 -

it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

A.     *Failure to Respond to Loan Modification Requests under 12 C.F.R. § 1024.41(c)(1)*

BANA first moves to dismiss the Bryants' claim that it failed to respond to their loan modification requests in violation of 12 C.F.R. § 1024.41.

Section 1024.41 of the Code of Federal Regulations specifies the procedures lenders must follow when reviewing borrowers' loss mitigation applications. *Obazee v. The Bank of New York Mellon*, No. 15-CV-1082, 2015 WL 4602971, at *2–3 (N.D. Tex. July 31, 2015) (discussing 12 C.F.R. § 1024.41). One such requirement calls for a servicer to notify a borrower, in writing, within 30 days after it receives a complete loss mitigation application, "which loss mitigation options, if any, it will offer the borrower, or the specific reasons for denying a complete loss mitigation application." *Id.* at 2 (citing 12 C.F.R. § 1024.41(c), (d)).

BANA contends that the Bryants have not sufficiently pled their claim here for two reasons. First, it says the Bryants' allegations are not specific enough. While the Bryants allege they sent BANA multiple modification applications between January and November 2014—and that BANA never responded—BANA says the Bryants "do not allege any facts relating to their purported applications or 'modification requests,' such as when they were submitted, how they were submitted, and/or whether the applications were submitted with supporting financial information." Doc. 12, Mot. to Dismiss at ¶ 7  (citing Doc. 10, Second Am. Compl. ¶¶ 7, 16).

In response, the Bryants point to "numerous specific facts, including number of applications,

dates and estimated time periods during which the applications were submitted, and time between applications when BANA failed to give the necessary responses." Doc. 14, Pls.' Resp. ¶ 26 (citing Doc. 10, Second Am. Compl. ¶¶ 6–7). They also argue that all they must allege is that "they sent the loss mitigation applications and that BANA failed to provide the lawful responses," given the regulation imposes no heightened pleading standard. *Id.* ¶¶ 26–27 (citing *Obazee,* 2015 WL 4602971, at *3;  12 C.F.R. § 1024.41(c)(1)(ii)).

BANA replies by reiterating its lack-of-specificity argument, and by contending that the Bryants misstate the law when they argue that all they "must allege is . . . that they sent the loss mitigation applications and that BANA failed to provide the lawful responses." Doc. 15, Def.'s Reply ¶ 4 (quoting Doc. 14, Pls.' Resp. ¶ 26). Rather, BANA says, the Bryants "must evidence that 'a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale,'" and that this is what triggers a servicer's obligations, discussed above. *Id.* ¶ 4 (citing 12 C.F.R. § 1024.41(c)(1)) (emphasis omitted).

For the reasons that follow, the Court finds that the Bryants have adequately pled their failure to respond to loan modification requests claim. BANA conflates what a plaintiff must ultimately prove under section 1024.41(c) with what a plaintiff must plead in order to survive a motion to dismiss. In *Obazee v. The Bank of New York Mellon,* 2015 WL 4602971, the plaintiff "allege[d] that[,] on July 1, 2014[,] he submitted a complete loss mitigation application; that his request has neither been approved nor denied; that '[i]n fact Plaintiff has received no notice or communication in connection to his request for mortgage assistance,' . . . and that[,] despite defendants' failure to comply with the notice provision in 12 C.F.R. § 1024.41(c)(1)(ii), they noticed his property for a March 3, 2015 foreclosure sale." *Id.* at 3 (internal citations omitted). The Court

found that "[t]hese allegations, taken as true and viewed favorably to [the plaintiff], [we]re sufficient to plausibly plead a violation of 12 C.F.R. § 1024.41." *Id.*[6]

Here, the Bryants allege the following: (1) "[they] sent . . . BANA a complete loss mitigation application [for a loan modification] on or about January 13, 2014"; (2) "[a]fter five weeks had elapsed without receiving any response from this first modification application . . . Larry R. Bryant sent . . . BANA [a second application] . . and spoke with a BANA representative named Nathan who helped him fill out the application"; (3) "[a]fter four [more] weeks elapsed without receiving any response from this second loan modification application, . . . Larry R. Bryant sent another completed loan modification application . . . [to which he] did not receive a response"; and that (4) "[b]etween January 2014 and November 2014, [the Bryants] submitted four applications for modifications to [BANA] . . . [but] never received a written response informing them of whether they had been approved or denied." Doc. 10, Second Am. Compl. ¶¶ 6–7. Comparing these allegations to the *Obazee* plaintiff's, the Court finds them far more detailed, and therefore sufficient to withstand BANA's Motion to Dismiss.

BANA also offers a second argument for why the Bryants' section 1024.41(c)(1) claim should be dismissed. In short, it contends that, because the Bryants were in bankruptcy while they allegedly sent the loan modification applications, "any negotiations regarding the modification of Plaintiffs' Loan would have likely been handled by Plaintiffs and BANA's bankruptcy counsel and would likely have been supervised by the Bankruptcy court," rendering their claims "not plausible in view of the Bankruptcy Action, which is a matter of public record." Doc. 12, Mot. to Dismiss ¶ 8. The Bryants,

---

[6] The *Obazee* Court did, however, later grant the defendant's motion to dismiss based on the fact that the plaintiff failed to adequately plead damages. *Obazee,* 2015 WL 4602971, at *3.

on the other hand, contend that "the loan modification application process [was] not supervised by the bankruptcy court," and that "any supervision or bankruptcy-related facts are irrelevant to the two causes of action that Plaintiffs have against BANA relating to mortgage servicing." Doc. 14, Pls.' Resp. ¶ 28. BANA does not address this argument in their reply. *See generally* Doc. 15, Def.'s Reply.

Again, the Court agrees with the Bryants. While BANA says it is "likely" that the modification negotiations would have been handled by the Bryants' and BANA's bankruptcy counsel, and supervised by the bankruptcy court, it cites no evidence or authority to show why this would be the case. And, even if it were, this would not automatically render the Bryants' claim implausible, given such requests might not appear in the bankruptcy record anyway.

In light of the above, the Court **DENIES** BANA's Motion to Dismiss the Bryants' failure to respond to loan modification requests claim under 12 C.F.R. § 1024.41(c)(1).[7]

B.    *Failure to Comply with Pre-Foreclosure Requirements for Servicers under 12 C.F.R. §§ 1024.41(f)(2),(g)*

Next, BANA moves to dismiss the Bryants' claim that it violated two foreclosure-related provisions:

(1) 12 C.F.R. § 1024.41(f)(2):

If a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless [certain requirements are met] . . . .

(2) 12 C.F.R. § 1024.41(g):

---

[7] BANA has not argued that the Bryants failed to adequately plead damages under section 2605(f), so the Court will not address this issue.

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:

Doc. 12, Mot. to Dismiss ¶ 9 nn.8–9 (citing 12 C.F.R. §§ 1024.41(f)(2), (g)).

BANA never commenced foreclosure proceedings against the Bryants, and it ceased servicing the loan on November 1, 2014. *Id.* (citing Doc. 10, Second Am. Compl. ¶¶ 7, 9). Based on this, BANA argues that the Bryants' claims here are implausible, and that their request for damages under 12 U.S.C. § 2605(f) should be dismissed. The Bryants agree. *See* Doc. 14, Pls.' Resp. ¶ 29 (clarifying that they "are alleging such claims against Defendant Rushmore Loan Management Services, LLC, and not against BANA").

Therefore, the Court **GRANTS** BANA's Motion to Dismiss the Bryants' 12 C.F.R. §§ 1024.41(f)(2), (g) claims and **DISMISSES** these claims **with prejudice.**

C.    *Failure to Notify Borrowers of Servicing Transfer under 12 U.S.C. § 2605(b),(c)*

Before the Court delves into BANA's argument regarding the Bryants' section 2605 claims, it will briefly address the Bryants' contention that the Court must exclude BANA's Exhibit E, the service transfer notice. In short, the Bryants argue that the notice has not been properly authenticated under Federal Rule of Evidence 901, and that it is otherwise inadmissible hearsay under Rule 802. Doc. 14, Pls.' Resp. ¶ 22–23. But since Exhibit E actually supports the Bryants' claims, the Court will consider it despite their objections.[8]

---

[8] The Court may also consider Exhibit E because it is "referred to in the plaintiff's complaint and [is] central to the plaintiff's claim." *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). The Bryants sue BANA for violating 12 U.S.C. § 2605(b), which requires a servicer mail notice to a borrower whenever it transfers servicing. Thus, Exhibit E is central to the Bryants' claim. Further, the Bryants refer to the notice in their complaint by discussing its absence. *See* Doc. 10, Second Am. Compl. ¶ 28. ("Plaintiffs did not receive written notice from either [BANA] or Rushmore regarding the transfer of the servicing of the loan.").

That settled, the Court addresses the substance of BANA's argument—that the Bryants have not stated a cognizable claim for a 12 U.S.C. § 2605(b)[9] violation based upon BANA's purported failure to notify them that it had transferred servicing on the loan to Rushmore. Subsection (b) requires that "[e]ach servicer of any federally related mortgage loan . . . notify the borrower in writing of any . . . transfer of the servicing of the loan to any other person . . . not more than 30 days after the . . . effective date of . . . transfer." 12 U.S.C. § 2605(b). BANA argues that this language makes clear that the statute "does not require actual 'receipt' of written notice of a servicing transfer by the borrower," and that notification in writing suffices. Doc. 12, Mot. to Dismiss. ¶ 12. Thus the bank says it fulfilled its statutory obligation when it sent the Bryants an October 14, 2014, letter informing them that servicing was being transferred to Rushmore, effective November 1, 2014. *Id.* (citing Doc. 12-2, Def.'s App. 48–50, Ex. E., Service-Transfer Notice. The letter also demonstrates that the Bryants "do not and cannot state a cognizable claim" under Section 2605(b), according to BANA.

The Bryants do not directly address BANA's argument about receipt versus notification. Instead, they begin by discussing their own interpretation of subsection (b)—that it only requires a plaintiff plead that (1) a servicer had a duty to send notice of a transfer within a particular time period,[10] and that (2) the servicer did not do so. Doc. 14, Pls.' Resp. ¶ 30 (citing 12 U.S.C. § 2605(b)). Then, they point out that they pled both of these elements, and that BANA's attached

---

[9] The Court finds it clear that the Bryants do not bring a claim against BANA under subsection (c), given it governs notice requirements from *transferees*, not *transferors*, and that BANA was a transferor. *See* 12 U.S.C. § 2605(c); Doc. 10, Second Am. Compl. ¶¶ 27–28; Doc. 12, Mot. to Dismiss. ¶ 10–11. The Bryants admit this. *See* Doc. 14, Pls.' Resp. ¶ 31. Thus, the Court will not address subsection (c).

[10] BANA concedes it had a duty to notify, so this is not an issue.

exhibit—a letter purportedly notifying them of the servicing transfer—does not render implausible their allegation that BANA did not actually send notice, given that the letter does not "contain any proof or indication of sending." *Id.* (citing Doc. 10, Second Am. Compl. ¶ 28).

BANA replies by pointing to the fact that the Bryants both (1) "acknowledge[ed] in the Complaint that Rushmore took over servicing of their Loan in 2014," and (2) "state[d] that[,] '[a]fter Rushmore began servicing the[ir] loan, Rushmore requested that Plaintiffs submit another loss mitigation application.'" Doc. 15, Def.'s Reply ¶ 5 (citing Doc. 10, Second Am. Compl. ¶¶ 7–8). This, BANA argues, establishes that "Plaintiffs [have] concede[ed] that they were aware of the servicing transfer from BANA to Rushmore,"[11] meaning, again, that they Bryants "do not and cannot state a cognizable claim" under section 2605(b). *Id.*

The Court first addresses BANA's argument that, because "notification" under subsection (b) requires only that a servicer *send* notice—not that a borrower actually *receive* notice—BANA's October 14, 2014, letter demonstrates that it complied with the statute's requirements, and so Bryants have not, and cannot, state a claim. As detailed above, section 2605(b)(1) requires that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any . . . transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1). "Regulation X, RESPA's implementing regulation, reiterates that, under the statute, this means that 'each transferor servicer and transferee servicer of any mortgage servicing loan shall *deliver* to the borrower a written Notice of Transfer.'" *Rodriguez v. Countrywide Homes*, 668 F. Supp. 2d 1239, 1245 (E.D. Cal. 2009) (emphasis added) (citing 24 C.F.R. § 3500.21(d)). Regulation X does not, however,

---

[11] BANA reiterates here that subsection (b) does not require actual *receipt* of written notice, only that the servicer notify the borrower in writing. Doc. 15, Def.'s Reply ¶ 5.

define the term "deliver," but it defines "mailing" in the following manner:

> The provisions of this part requiring or permitting mailing of documents shall be deemed to be satisfied *by placing the document in the mail (whether or not received by the addressee) addressed to the addresses stated in the loan application* or in other information submitted to or obtained by the lender at the time of loan application or submitted or obtained by the lender or settlement agent, *except that a revised address shall be used where the lender or settlement agent has been expressly informed in writing of a change in address.*

*Id.* (citing 24 C.F.R. § 3500.11) (emphasis added). Thus, to show it satisfied section 2605(b)'s requirements, BANA must show that it placed this notice in the mail to such an address.

The pleadings and briefing do not, however, prove that BANA necessarily did this, and so they cannot, and do not, render the Bryants claim here implausible. The service-transfer notice (Exhibit E) is addressed to "LARRY R BRYANT & LAURA BRYANT, 200 W BROAD ST, FORNEY, TX 75126." See Doc. 12-2, Def.'s App. 48–50. Ex. E, Service-Transfer Notice. And while the loan application is not included in either party's appendix, the Broad Street address does not appear in the Adjustable Note, Deed of Trust, Loan Modification Agreement, or Assignment, either. *See* Doc. 12-2, Def.'s App. 1–46, Exs. A–D. In fact, the docket sheet for the Bryants' bankruptcy, which lasted until December 31, 2015, lists the Bryants' address as "14104 Bridle Trail Forney, TX 75126." *Id.* at 72, Ex. I, Bankr. Docket Sheet.[12] Further, there is no entry suggesting that the Bryants changed their address at any point during these proceedings. *Id.* So, without more information on this point, it is unclear to the Court why the notice of transfer was mailed to "200 W BROAD ST, FORNEY, TX 75126" rather than the 14104 Bridle Trail address.

---

[12] The bankruptcy docket sheet is a public record, so the Court may properly consider it. *See Norris*, 500 F.3d at 461 n. 9 ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.") (citation omitted); *In re Cortez*, 217 B.R. at 538 (finding bankruptcy filings and dockets are public records).

Accordingly, neither the pleadings nor any of the briefing establish that BANA's service-transfer notice was definitively mailed to the 200 West Broad Street address. Thus, they do not conclusively establish that a proper mailing occurred under 24 C.F.R. § 3500.11. Regulation X requires BANA "plac[e] the document in the mail . . . addressed to the addresses stated in the loan application or in other information submitted to or obtained by the lender at the time of loan application or submitted or obtained by the lender or settlement agent," or to "a revised address . . . [if] the lender or settlement agent has been expressly informed in writing of a change in address." 24 C.F.R. § 3500.11. BANA has not provided a copy of the loan application, or pointed to any other document sufficient to demonstrate that the 200 West Broad Street address was, indeed, a valid address for the Bryants. Thus, the service-transfer notice does not conclusively demonstrate that the Bryants have not stated a claim under section 2605(b).

The Court is equally unconvinced by BANA's second argument—that the Bryants' complaint demonstrates they were aware of the servicing transfer and therefore cannot, and did not, state a claim under section 2605(b). The Bryants' complaint alleges only that "[a]fter Rushmore began servicing the loan, Rushmore requested that Plaintiffs submit another loss mitigation application," and that "Plaintiffs, through their agents, [then] submitted a complete loss mitigation application *in late June of 2015*." Doc. 10, Second Am. Compl. ¶ 8 (emphasis added). All this demonstrates is that, at some point between November 1, 2014, and June 2015, the Bryants became aware of the transfer. Under section 2605(b), BANA was required to notify the Bryants of the transfer by *December 1, 2014* (within thirty days of the November 1, 2014 transfer). Accordingly, and contrary to BANA's assertions otherwise, the Bryants' complaint does not definitively show that BANA informed the Bryants of the transfer by December 1, 2014, and therefore complied with this

requirement. The complaint does not show, then, that the Bryants have failed to state a plausible

claim here. In light of the above, the Court **DENIES** BANA's Motion to Dismiss the Bryants'

section 2605(b) claim.

D.      *Agency and Respondeat Superior*

BANA also urges the Court to dismiss the Bryants' claims for agency and respondeat

superior, given the two "are doctrines of liability and are not properly pleaded as separate causes of

action." Doc. 12, Mot. to Dismiss. ¶ 14 (citing *Kenneally v. Gulfside Supply, Inc.*, No. A-10-CA-289,

2010 WL 3220672, *2 (W.D. Tex. Aug. 13, 2010)). Indeed, they are. That is why the Bryants never

asserted them as independent claims, but, instead, as theories of vicarious liability, as they indicate.

*See* Doc. 14, Pls.' Resp. ¶ 32; Doc. 10, Second Am. Compl. ¶ 11; Doc. 5, Pls.' Resp. to Def.'s First

Mot. to Dismiss ¶ 21. There being no independent claim here, the Court has nothing to dismiss.

E.      *Failure to Send Monthly Statements under the Truth in Lending Act (15 U.S.C. § 1638(f))*

Insofar as the Bryants direct their claim for failure to send monthly statements for periodic

billing cycles under the Truth in Lending Act (TILA), 15 U.S.C. § 1638(f), against BANA, the bank

moves to dismiss it. Doc. 12, Mot. to Dismiss ¶ 15. BANA correctly acknowledges, however, that

the Bryants' complaint seems to direct this claim only toward Rushmore. *See id.*; Doc. 10, Second

Am. Compl. ¶ 25 ("Plaintiffs have not received any monthly statement for a periodic billing cycle

*since Rushmore began servicing the loan* in November 2014.") (emphasis added); *see generally* Doc. 14,

Pls.' Resp. (not addressing the 15 U.S.C. § 1638(f) claim). Therefore, the Court need not dismiss

this claim, because it is clear the Bryants do not assert it against BANA.

F.      *Unlawful Debt Collection Practices under the Texas Debt Collection Practices Act (TDCPA)*

For the reasons stated above, *see supra* Part III(E), the Court finds that the Bryants do not

bring their unlawful debt collection practices claim under the TDCPA against BANA, either. *See* Doc. 12, Mot. to Dismiss ¶ 15; *see generally* Doc. 14, Pls.' Resp. (not addressing TDCPA claim); Doc. 10, Second. Am. Compl. ¶¶ 29–34. Therefore, there is no need to dismiss this claim, either.

G.    *Request for a Declaratory Judgment*

Finally, BANA moves to dismiss with prejudice the Bryants' request for a declaratory judgment for failure to state a cognizable claim for relief. Doc. 12, Mot. to Dismiss. ¶ 16 (citing *Lindsey v. Ocwen Loan Servicing, LLP*, No. 10-CV-0967, 2011 WL 2550833, at *6 (N.D. Tex. June 27, 2011). But the Bryants make clear in their response that they do not seek a declaratory judgment against BANA. Doc. 14, Pls.' Resp. ¶ 33. Indeed, their complaint shows that they seek such relief only against Rushmore. Doc. 10, Second Am. Compl. ¶ 36. So again, because the Bryants bring no such claim against BANA, the Court need not dismiss it.

## IV.

## CONCLUSION

In light of the above, the Court:

(1)    **DENIES** BANA's Motion to Dismiss the Bryants' claim for failure to respond to loan modification requests under 12 C.F.R. § 1024.41;

(2)    **GRANTS** BANA's Motion to Dismiss the Bryants' claim that BANA failed to comply with pre-foreclosure requirements for servicers under 12 C.F.R. §§ 1024.41(f)(2), 1024.41(g), and for damages under 12 U.S.C. § 2605(f), and **DISMISSES** those claims **with prejudice**;

(3)    **DENIES** BANA's Motion to Dismiss the Bryants' claim that BANA failed to notify them of a servicing transfer under 12 U.S.C. § 2605(b).

Further, the Court finds that the Bryants do not raise the following issues, at least as to BANA:

- 16 -

(4) agency and respondeat superior;

(5) failure to send periodic statements for residential mortgage loans under TILA, 15 U.S.C. § 1638(f);

(6) "threatening to take an action prohibited by law, specifically seeking to sell the Property at a foreclosure sale in violation of federal law" under the TDCA; and

(7) request for a declaratory judgment.

Therefore, the Court need not weigh-in on these issues.

Should the Bryants wish to replead their claims under 12 C.F.R. §§ 1024.41(f)(2),(g), they have until **July 15, 2016**, to do so.

**SO ORDERED.**

**SIGNED: June 27, 2016**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE